**CAMPBELL, Tax Collector, v. GROH et al.**
(No. 8038.)

Court of Civil Appeals of Texas. San Antonio. June 20, 1928.

Rehearing Denied July 18, 1928.

Automobiles ☞78—Persons renting automobiles having small seating capacity for private use of renters without fixed route held not liable for "motorbus" tax (Pen. Code 1925, art. 820).

Persons renting automobiles having seating capacity of not more than five persons, without driver, for private use of renters for any purpose desired, without supervision or requirement of operation over fixed route, *held* not liable for motorbus taxes, under Pen. Code 1925, art. 820, in view of statutory definition of "motorbus" under Commercial Vehicle Act (Laws 1921, c. 131) § 16, as amended by Laws 1923, c. 75, § 16e, defining "motorbus" as passenger motor vehicle with seating capacity of more than seven persons; term being generally limited to vehicles traveling back and forth along fixed routes.

Appeal from District Court, Bexar County; Robt. W. B. Terrell, Judge.

Suit by Dan Groh and others against R. Neil Campbell, Tax Collector. Judgment for plaintiffs, and defendant appeals. Affirmed.

T. J. Newton and L. J. Gittinger, both of San Antonio, for appellant.

Leonard Brown, of San Antonio, for appellees.

COBBS, J. Appellees brought suit against appellant, alleging substantially that each of them was and had been in the driverless car business in San Antonio, Bexar county, Tex., and that each of them owned automobiles of various makes and different seating capacities, but none of which have a seating capacity greater than five, including the seat for the driver; that these cars were rented to patrons for the hour or day, and were used by the renters for any purpose renters saw fit, and were not operated over any fixed route, and were under the absolute control of the renter, without any supervision by any of the plaintiffs, during the time such car was so rented.

Plaintiffs further averred that on or about January 1, 1928, they offered to pay the license fee for the operation of such cars to defendant and to secure license plates, but the defendant refused to issue license receipts and plates unless plaintiffs each paid the seat tax of $4 per seat for each vehicle, provided for in article 820 of the Penal Code of the state of Texas (Revision of 1925); that defendant was threatening to arrest and prosecute plaintiffs because such cars were being operated without licenses therefor, and that such arrest and prosecution of plaintiffs and of such patrons and renters would cause great loss and damage for which plaintiffs had no adequate remedy at law; that such patrons and renters would refuse to rent such cars if the cars bore a motorbus license plate, because such patrons desired the cars for use as pleasure or private cars, thereby causing great loss and damage to plaintiffs; that plaintiffs were not liable to pay such seat tax of $4 per seat on each vehicle as provided by article 820 of the Penal Code of the state of Texas (Revision of 1925) because such act provided for the payment of a seat tax by the owner of any passenger automobile operated as a motorbus; and that "(a) plaintiffs were not operating any motorbusses; "(b) that the automobiles so rented out by plaintiffs and the manner of operation thereof did not constitute that such automobiles were motorbusses; and "(c) that chapter 75 of the Acts of the 38th Legislature was intended to apply, and so provided in its caption, only to motorbusses with a seating capacity of more than seven passengers and that none of the cars owned by plaintiffs had a seating capacity of seven passengers, and were therefore not motorbusses under the caption of such act."

Among other things, appellant answered

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and pleaded a general demurrer, general denial, and by way of special answer a plea that plaintiffs were the owners of motor vehicles operating for hire in Bexar county, Tex., and in addition to the regular horse power and weight fee provided by law the statute provided for a seat tax of $4 for each passenger such vehicle would seat; that defendant was county tax collector of Bexar county, Tex.; that it was his duty to collect such tax; and that he was without authority to issue licenses and plates unless such seat tax was paid. Defendant prayed that the injunction and mandamus be denied.

On February 18, 1928, the court entered his decree in said cause nunc pro tunc as of January 19, 1928, wherein he directed the clerk of the district courts of Bexar county, Tex., to issue a writ of mandamus to defendant as tax collector of Bexar county, Tex., to issue to each of the plaintiffs registration receipts and certificates, and license plates, for noncommercial motor vehicles upon the payment of said plaintiffs of the registration fixed by law for the particular automobile or automobiles sought to be registered.

The case was tried before the court, without a jury, and found the facts to be as follows:

"I find that the plaintiffs and each of them are engaged in what is known as the driverless car business; that each of the plaintiffs own certain automobiles of different makes and seating capacity, 75 per cent. of said automobiles being coupés and roadsters with a seating capacity of two persons, and the other automobiles being five-passenger cars, with a seating capacity of five persons, and that none of the automobiles owned by the plaintiffs have a seating capacity in excess of five persons, including the driver; that said cars are rented to the general public without drivers, the cars being rented for a stipulated price per hour or day, and the person or persons renting the same have the right to go to any place they see fit, and they are not used on any particular route, and the contract between the renters of the cars, and the owners renting the same provides that the lessee of the cars or renters will use the same for private purposes only, and will not sublease or re-rent the same to any other person; that the total number of cars owned by all of the plaintiffs is about 125; that the defendant has refused to issue any but motorbus licenses and plates for the cars owned by plaintiffs; that the plaintiffs have tendered to the defendant as tax collector of Bexar county, Tex., the registration fees and taxes required by articles 6675 and 6678 of the Revised Civil Statutes of 1925; and that the defendant refused to accept the same and issue proper registration certificate and license seals on the ground that the tender did not include the $4 seating tax as provided in article 820 of the Penal Code."

Some of the legislation on the subject is that, in 1921, the Legislature passed what is known as the "Commercial Vehicle Act" (Acts 1921, c. 131, p. 253). This act contained the following provision, to wit:

"*Motorbusses.* Owners of passenger motor vehicles that have a seating capacity of more than seven passengers, shall pay in addition to the fee of thirty-five (35¢) cents per horse power an additional registration fee of one ($1.00) dollar for each number of passengers the motor vehicle will seat in excess of seven passengers. Any owner of a motor vehicle with a seating capacity of more than seven passengers who shall fail or refuse to comply with this section shall be fined in any sum not more than two hundred ($200.00) dollars."

In this act the Legislature definitely defines a "motorbus" as a passenger motor vehicle with a seating capacity of more than seven passengers.

In 1923, the above article was amended by section 16e of chapter 75, p. 155, of the laws of 1923, and after amendment read as follows:

Section 16e. *Motorbusses*—Owners of passenger motor vehicles operating for hire shall pay in addition to the fee of seventeen and one-half cents (17½¢) per horse power and the weight fee provided therefor, an additional registration fee of four ($4) dollars for each number of passengers the motor vehicle will seat. Any owner of a motorbus vehicle who shall fail or refuse to comply with this section shall be fined in any sum not more than two hundred ($200) dollars."

It will be seen that present article 820 is in exactly the same language of section 16e of the Acts of 1923. Chapter 75 of the Acts of 1923, which contained said section 16e, now article 820 of the Penal Code, contained a provision in its caption as follows:

"Defining commercial motor vehicles and tractors, prescribing penalties for the operation of a motor vehicle on the public highway not registered in accordance with the provisions of this act, prescribing the maximum weights and dimensions of motor vehicles that may be operated on the public highways, providing an additional registration fee for passenger motor vehicles with a seating capacity of more than seven passengers."

In the act of 1921 a motorbus was clearly defined as a passenger motor vehicle with a seating capacity in excess of seven passengers. The general subject of that act was, in respect to commercial vehicles, defined as any motor vehicle with a net carrying capacity of one ton, intended, designed, or used for the transportation of property, etc. It then defined motorbusses as passenger motor vehicles that have a seating capacity in excess of seven; the emergency clause being as follows:

"The fact that the present license fees for heavy freight carrying motor vehicles and for motor vehicles carrying passengers for hire are wholly inadequate to compensate for damages done to the public highways of the state by their use," etc.

We do not find anything in the tax law that defines driverless motor cars as coming within any provisions of that act. It seems to be a situation in the automobile passenger service sui generis. Webster's New International Dictionary defines a "motorbus" as an automobile bus. The same author defines bus, as an omnibus, which is:

"A heavy four-wheeled public vehicle designed to carry a comparatively large number of passengers; a bus; especially such a vehicle, entered from the rear and having inside a long benchlike seat on each side, with or without seats on top, and drawn by two or more horses or self-propelled. *Omnibusses usually travel back and forth along fixed routes.* Hence, loosely, almost any large carriage used as a means of public conveyance for passengers paying separate fares. In Great Britain, by the Towns Police Clauses Act 1889 (52 & 53 Vict c. 14, § 3), an omnibus includes 'every omnibus (strictly speaking), charabanc, wagonett, brake, stagecoach, and other carriage plying or standing for hire by, or used to carry, *passengers at separate fares to, from, or in any part of any particular district, in question.'* We are of opinion that it (a statute authorizing a city to license omnibusses) applies to passenger railway cars. They are omnibusses, or, if not, they are vehicles in the nature of omnibusses. They are opened to all; intended for all. * * *" (Italics ours.)

The items upon which assessments are levied for taxes are never left to conjecture, but are definitely defined. These automobiles are used for the purpose of hire to those who wish to use them, without any driver, and for their own use and not in transporting passengers for fares. The proof shows that appellees' automobiles are not used as busses, as above defined. They are for the time being controlled solely by the hirer and are not opened to any, nor intended for all passengers.

We see, after a careful review of the statutes, that no reference is made to driverless cars in any provisions of the law requiring the owners thereof to pay motorbus taxes.

The findings of the trial court and the conclusions thereon are supported by the law and the evidence and are adopted by us.

The judgment is affirmed.